IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

NICOLE JORDON,

                Plaintiff,                Case No.

v.                                      Judge _____
                                      Magistrate Judge _____

THE METROPOLITAN
GOVERNMENT OF NASHVILLE AND
DAVIDSON COUNTY, TENNESSEE,

                                          JURY DEMAND

                Defendant
_____/

## COMPLAINT

Plaintiff, Nicole Jordon, worked for Defendant, The Metropolitan Government of Nashville and Davidson County, Tennessee ("Metro") in its Parks Department without incident until she requested that Metro continue to accommodate her disability of cancer. Specifically, Ms. Jordon requested to continue working from home for an additional month until she completed her cancer treatments which made her immune-compromised. Ms. Jordon's physician submitted a letter notifying Metro of the estimated end of her treatment. Ms. Jordon worked from home for five months without issue and received praise for her performance. However, within just one month remaining until the completion of her treatment, Metro terminated Ms. Jordon without notice or engaging in an interactive conversation regarding her ability to continue working from home or if she had the ability to return to in person work in any capacity. As a result, Metro violated Ms. Jordon's rights under the Americans with Disabilities Act and the Tennessee Disability Act. Accordingly, Ms. Jordon files the instant Complaint for violations of the ADAAA and the TDA.

## PARTIES

1.      Plaintiff, Ms. Nicole Jordon, is a citizen and resident of Nashville, Davidson County, Tennessee, and a former employee of Defendant.

2.      Defendant Metropolitan Government of Nashville and Davidson County, Tennessee ("Metro") operates the Parks Department ("Parks") in Nashville, Davidson County, Tennessee. At all material times, Defendant has been an employer as defined by the ADA and under state law.

## JURISDICTION AND VENUE

3.      This is an action for unlawful employment practices brought under the Americans with Disabilities Act 42 U.S.C. §§ 12101 *et. seq.* ("ADA")*,* as amended by the ADA Amendments Act of 2008 ("ADAAA") (Count I) and the Tennessee Disability Act, T.C.A. § 8-50-103 ("TDA") (Count II).

4.      The Court has jurisdiction under 28 U.S.C. §§ 1331 and 1367(a). Venue is proper under 28 U.S.C. § 1391.

5.      Plaintiff complied with all conditions precedent to the filing of her claims pursuant to 42 U.S.C. § 12101 *et. seq*, to wit: a charge of discrimination was filed with the Equal Employment Opportunity Commission ("EEOC") within 300 days of the unlawful employment practice. The EEOC issued Plaintiff a Notice of Right to Sue and this action was commenced within 90 days of receipt of the Right to Sue.

## FACTS

6.      Plaintiff, Nicole Jordon was hired by Defendant Metro in December 2019.  Ms. Jordon worked as a part-time Recreation Leader. In her position she developed after school and adult programming.

7.      In November 2020, Ms. Jordon was diagnosed with breast cancer which affects

major bodily systems including the immune and lymphatic systems and substantially limits major life activities such as eating and sleeping.

8.     In this same month, Ms. Jordon notified the Superintendent, Darlene Morrow, and a supervisor, Stephan Neolms, of her diagnosis. Ms. Morrow told Ms. Jordon she would be transferred into a different position until her treatment was complete.

9.     Ms. Jordon is a qualified individual with a disability under 29 C.F.R. §1630.2(h)(1).

10.     Ms. Jordon was qualified for her job with Defendant and performed her job duties in a competent and satisfactory manner.

11.     Around this time, most Parks Department centers were closed due to COVID-19.

12.     Within a week of notifying Defendant of her illness, Ms. Morrow contacted Ms. Jordon and stated that Ms. Jordon would be transferred into a position as Ms. Morrow's administrative assistant and work on special projects, one of which would later include drafting a new Sports Handbook for the department. This would allow Ms. Jordon to work from home and receive her cancer treatments. Further, Ms. Jordon would be reporting to Ms. Morrow directly and perform work for Ms. Thornton as available.

13.     Thomas Floyd, the Parks Department Regional Director, provided Ms. Jordon paperwork to sign regarding her change in position as well as her transition into working from home. Ms. Jordon signed all required documentation.

14.     As some Parks Department centers began to open, although not to 100% capacity, Ms. Jordon's physician provided Defendant a letter stating that Ms. Jordon would continue to receive treatment through May 26, 2021, which caused her to be immune-compromised, increasing her risk for COVID-19, and needed to work from home.

15.     Her physician noted he would re-evaluate Ms. Jordon's immune status at the

completion of her treatments.

16.     From November until April, Ms. Jordon's former manager, Anne Thornton, would contact her every week and ask Ms. Jordon when she was returning in person, asking what work she is performing for Ms. Morrow, and assigning Ms. Jordon additional duties, despite her new role. Ms. Thornton would complain that Ms. Jordon wasn't able to work in person.

17.     Ms. Thornton additionally would request information regarding Ms. Jordon's health, which she would then disclose this private information to Ms. Jordon's co-workers. A number of Ms. Jordon's co-workers would contact her about her health information that they learned from Ms. Thornton.

18.     Ms. Jordon found these weekly calls to be harassing in nature, as Ms. Thornton did not respect that Ms. Jordon was an individual with a disability receiving treatment and also did not respect that she had been transferred to a new position which allowed her to work from home as an accommodation.

19.     Ms. Jordon reported these constant requests to return to in-person work to her supervisor, Ms. Morrow.  Ms. Morrow told Ms. Jordon not to worry about Ms. Thornton.

20.     Ms. Thornton continued these weekly harassing phone calls and complaints about Ms. Jordon working from home.

21.     On or about April 14, 2021, Ms. Jordon turned in the new Sports Handbook she had developed and written as part of her new role. She received praise from both the Superintendent and the Director of the Parks Department for her performance.

22.     On April 19, 2021, Ms. Jordon received a call from Ms. Morrow informing Ms. Jordon that she needed to resign.

23.     On this same call, when Ms. Jordon refused to resign, Ms. Morrow informed her

that she would have terminate Ms. Jordon, and in fact, Ms. Jordon had already been terminated as of April 16, 2021.

24.    Ms. Morrow stated that "someone" was supposed to have contacted Ms. Jordon on April 16th, but that person did not want to be the one to terminate her, so Ms. Morrow contacted her.

25.    During this call, Ms. Morrow stated that she hated to terminate Ms. Jordon, as she had been doing an amazing job.

26.    Upon receipt of her Separation Notice, Ms. Jordon became aware that she was terminated because she was "unable to perform job duties due to health issues. At this time we can no longer accommodate her limitations."

27.    However, no one at Metro had told her that she could no longer be accommodated by working from home.

28.    Metro failed to engage in a conversation with Ms. Jordon regarding her accommodations prior to her termination.

29.    Ms. Jordon had successfully been completing all the requirements of her administrative assistant position.

30.    Metro did not engage Ms. Jordon in any conversation about her ability to come back into the workplace, perform the Program Leader position, nor express any concerns regarding her ability to perform her administrative position requirements.

31.    Metro terminated Ms. Jordon just one month prior to the completion of her cancer treatments and her doctor's updated evaluation of her condition and ability to return to work in person.

32.     Metro discriminated against Ms. Jordon on the basis of her disability, refused to engage in an interactive process about her accommodation requests, and retaliated against her for requesting an accommodation in the workplace and complaining about disability harassment.

## Count I
## Violation of ADA/ADAAA- Disability Discrimination/Retaliation

33.     Plaintiff restates and incorporates herein the above paragraphs in their entirety.

34.     Plaintiff was a qualified individual with a disability.

35.     Defendant discriminated and retaliated against Plaintiff because of her disability in violation of the ADA.

36.     Defendant has violated the ADA by refusing to engage in a good faith interactive process with Plaintiff to determine whether her restrictions could be accommodated.

37.     Defendant further violated the ADA by unilaterally revoking Plaintiff's accommodations of working from home while she was receiving cancer treatments.

38.     Plaintiff was performing all the essential functions of her administrative position. Plaintiff could perform the essential functions of both the Program Leader position and/or the Administrative Assistant with a reasonable accommodation. Plaintiff had made a request for reasonable accommodation, and Metro unilaterally revoked the accommodation one month before the completion of her cancer treatments.

39.     Plaintiff was subjected to a hostile work environment, and retaliated against due to her disability and due to her requests for reasonable accommodation and complaints of disability harassment.

40.     Defendant discriminated against Plaintiff by terminating her without engaging in a good faith interactive conversation regarding her requested accommodations.

41.     As a direct and proximate result of Defendant's unlawful acts, Plaintiff suffered and continues to suffer emotional and physical pain, suffering, professional and personal embarrassment, humiliation, loss of enjoyment of life, inconvenience and lost earnings and benefits.

42.     As a result, Plaintiff is entitled to recover damages, including lost wages and benefits, compensatory and punitive damages, attorneys' fees, costs, interest, reinstatement, front pay and benefits, and any other legal and equitable relief to which she may be entitled.

### Count II
### Violation of TDA- Disability Discrimination/Retaliation

43.     Plaintiff restates and incorporates herein the foregoing paragraphs.

44.     Plaintiff was a qualified individual with a disability.

45.     Plaintiff was discriminated against due to her disability.

46.     Defendant violated the TDA when it terminated Plaintiff due to her disability, cancer.

47.     As a direct and proximate result of Defendant's unlawful acts, Plaintiff suffered and continues to suffer emotional pain and physical pain, suffering, professional and personal embarrassment, humiliation, loss of enjoyment of life, inconvenience and lost earnings and benefits.

48.     As a result, Plaintiff is entitled to recover damages, including lost wages and benefits, compensatory and punitive damages, attorneys' fees, costs, interest, reinstatement, front pay and benefits, and any other legal and equitable relief to which she may be entitled.

### RELIEF REQUESTED

Plaintiff respectfully requests:

1.      Judgment in her favor on all counts;

2.      A jury trial;

3.      Back pay and damages for lost benefits or actual damages;

4.      Reinstatement or front pay;

5.      Damages for physical pain, embarrassment, humiliation, stress, anxiety, inconvenience, and loss of enjoyment of life;

6.      Attorneys' fees and expenses;

7.      Prejudgment interest and, if applicable, post-judgment interest; and

8.      Such other and further legal or equitable relief to which she may be entitled under the ADA and TDA, including a declaration that Defendant violated her civil rights and training for Defendant's managers so that they will not continue to discriminate against other employees because of their disability.

Respectfully submitted,

*/s Heather Moore Collins*
Heather Moore Collins BPR # 026099
Anne Hunter BPR # 022407
Ashley Shoemaker Walter #037651
Collins & Hunter PLLC
7000 Executive Center Drive, Suite 320
Brentwood, TN 37027
615-724-1996
615-691-7019 FAX
heather@collinshunter.com
anne@collinshunter.com
ashley@collinshunter.com

*Attorneys for Plaintiff*